UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HIGH PERFORMANCE PROPERTIES NO. 3, LLC,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 24-1821 |
| EDUCATIONAL MANAGEMENT, INC.,<br>    Defendant | SECTION: "E" (1) |

### ORDER AND REASONS

Before the Court is High Performance Properties No. 3, LLC's ("Plaintiff") motion for summary judgment.[1] Defendant Educational Management, Inc. ("Defendant") filed an opposition.[2] Plaintiff filed a reply.[3] After Plaintiff's motion for summary judgment was fully submitted, the Court permitted supplemental briefing.[4] Plaintiff filed a supplemental memorandum in support of its motion for summary judgment.[5] Defendant filed a supplemental opposition.[6] Plaintiff filed a supplemental reply.[7]

Also before the Court is Plaintiff's motion for disbursement of registry funds.[8] Defendant filed an opposition.[9]

### BACKGROUND

On July 19, 2024, Plaintiff filed a complaint alleging that it owns a commercial

---

[1] R. Doc. 14.
[2] R. Doc. 17.
[3] R. Doc. 20.
[4] R. Doc. 26; R. Doc. 34.
[5] R. Doc. 27.
[6] R. Doc. 29.
[7] R. Doc. 38.
[8] R. Doc. 41.
[9] R. Doc. 43.

1

building located at 3200 Cleary Avenue in Metairie, Louisiana (the "Property").[10] Plaintiff alleges that on July 1, 2013, it began leasing the Property to Defendant (the "Lease").[11] Plaintiff alleges the Lease was renewed on July 1, 2021 for a five year period, which extended the Lease through June 30, 2026.[12] Plaintiff alleges, under the Lease, Defendant owes rent of $33,500 per month.[13] Plaintiff alleges that, if rent is not paid before the tenth day of each month, the Lease stipulates a late fee of 5% of the rental payment due.[14] On October 17, 2024, Defendant filed an answer to Plaintiff's complaint.[15] As affirmative defenses, Defendant alleges Plaintiff "failed to properly maintain the leased premises as required by Section 15 of the" Lease and "failed to provide proper notice of default and an opportunity to cure the default as required by Section 21 of the" Lease.[16]

Plaintiff's sole claim is breach of contract.[17] In Plaintiff's complaint, Plaintiff alleged that as of July 19, 2024, Defendant had failed to pay rent for the months of May, June, and July, 2024.[18] Plaintiff alleged it has made multiple amicable demands on Defendant.[19] Plaintiff alleged Defendant still occupies the Property.[20] Plaintiff alleged it has put Defendant in default for past due rent through a June 28, 2024 email.[21] Defendant allegedly is in default of its lease with Plaintiff due to Defendant's failure to pay rents and penalties.[22]

---

[10] R. Doc. 1 at ¶ 3.
[11] *Id.* at ¶ 4.
[12] *Id.* at ¶ 5.
[13] *Id.* at ¶ 6.
[14] *Id.* at ¶ 7.
[15] R. Doc. 9.
[16] *Id.* at pp. 3-4.
[17] *See generally* R. Doc. 1.
[18] *Id.* at ¶ 8.
[19] *Id.* at ¶ 9.
[20] *Id.*
[21] *Id.* at ¶ 10.
[22] *Id.* at ¶ 11.

On October 21, 2024, Plaintiff filed a motion for summary judgment arguing that it is uncontested that Defendant failed to pay Plaintiff multiple months rent and is liable to Plaintiff for the unpaid rent.[23] Plaintiffs asks that the Court "grant its motion for summary judgment for the payment of all past due rent and penalties, as well as attorney fees and costs."[24] In its first opposition, Defendant argues only that there are disputed facts with respect to whether Plaintiff satisfied the Lease's pre-suit notice provisions.[25] Plaintiff filed a reply in support of its motion for summary judgment.[26]

On February 4, 2025, Plaintiff moved the Court for leave to file a supplemental memorandum in support of its motion for summary judgment and a supplemental statement of undisputed material facts to reflect that it has satisfied the Lease's pre-suit notice requirements.[27] The Court granted Plaintiff's motion and also granted Defendant leave to file a supplemental opposition.[28] On February 7, 2025, Plaintiff filed a supplemental memorandum in support of its motion for summary judgment and a supplemental statement of undisputed material facts.[29] In Plaintiff's amended statement of undisputed material facts, Plaintiff stated it is undisputed that Defendant owes Plaintiff "past due rent for the months, May, June, July, August, September, October, November and December, 2024, January and February 2025, as well as penalty payments of $1,675/mo for each of the past due monthly payments except for February."[30]

On February 18, 2025, Defendant filed a supplemental opposition to Plaintiff's

---

[23] R. Doc. 14.
[24] R. Doc. 14-1 at pp. 2-3.
[25] R. Doc. 17.
[26] R. Doc. 20.
[27] R. Doc. 25; R. Doc. 25-1.
[28] R. Doc. 26.
[29] R. Doc. 27; R. Doc. 27-1.
[30] R. Doc. 27-1 at ¶ j. (citing R. Doc. 27-2).

motion for summary judgment.[31] Defendant argues the Court should deny Plaintiff's motion for summary judgment because there are genuine disputes of material fact regarding the amount of rent Defendant owes Plaintiff and whether Plaintiff is responsible for repairing the Property's air conditioning.[32] Defendant no longer argues that Plaintiff has not satisfied the Lease's pre-suit notice provisions.[33] Defendant attached to its supplemental opposition to Plaintiff's motion for summary judgment a declaration of Brent L. Mills ("Mills"), the President of Defendant's parent corporation, signed under penalty of perjury.[34] In his declaration, Mills attests that "[a]s [Defendant] has notified the Lessor" through "multiple written demands," "the air conditioning systems, because of their age and because the Lessor has refused to upgrade [them], do not function properly and do not provide adequate cooling so that the building can be used for student classes and other student activities."[35] Mills attests that, "[t]o date, [Defendant] has spent $82,498.93 on unsuccessful repairs to the air conditioning system."[36] Defendant attaches to Mills's declaration "a spreadsheet which itemizes the sums spent by [Defendant] on its repair attempts."[37]

On February 20, 2025, the Court granted Plaintiff leave to file a supplemental reply in support of its motion for summary judgment.[38] On February 26, 2025, Plaintiff filed a

---

[31] R. Doc. 29.
[32] *Id*. Defendant also argues that the Court should deny Plaintiff's motion for summary judgment because Defendant filed a motion to amend its answer to assert a counterclaim. *Id*. at pp. 8-9; R. Doc. 28. The Court denied Defendant's motion for leave to amend its answer. R. Doc. 42. Accordingly, this argument is moot.
[33] R. Doc. 29.
[34] R. Doc. 29-1 (Mills Declaration).
[35] *Id*. at ¶¶ 8-9.
[36] *Id*. at ¶ 12.
[37] R. Doc. 29-2.
[38] R. Doc. 34.

supplemental reply.[39] Plaintiff argues Defendant is responsible for repairs to the Property's air conditioning and that Mills's affidavit is insufficient to defeat Plaintiff's motion for summary judgment.[40]

## LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] "An issue is material if its resolution could affect the outcome of the action."[42] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[43] All reasonable inferences are drawn in favor of the nonmoving party.[44] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[45]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[46] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving

---

[39] R. Doc. 38.
[40] *Id.*
[41] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[42] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[43] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[44] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[45] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[46] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[47]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[48] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[49] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[50] Under either scenario, the burden then shifts back to the movant to

---

[47] *Celotex*, 477 U.S. at 322-24.
[48] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[49] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[50] *Celotex*, 477 U.S. at 332-33.

6

demonstrate the inadequacy of the evidence relied upon by the nonmovant.[51] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[52] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[53]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[54]

## UNDISPUTED FACTS

The following facts are undisputed. Plaintiff owns the Property.[55] Plaintiff began leasing the Property to Defendant on July 1, 2013 pursuant to the Lease.[56] Both parties renewed the Lease on July 1, 2021 for a five-year period, from July 1, 2021 through June

---

[51] *Id.*
[52] *Id.* at 332-33 & n.3.
[53] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[54] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[55] R. Doc. 14-4 at ¶ a.; R. Doc. 19 at ¶ a.
[56] R. Doc. 14-4 at ¶ b.; R. Doc. 19 at ¶ b.

30, 2026.[57] Pursuant to the Lease and its addendum, Defendant is obligated to pay $33,500 per month in rent on or before the 10th day of each month.[58] Also pursuant to the Lease and its addendum, if the rent is not paid on or before the 10th day of each month, 5% of the rent amount is assessed as a late charge, which is due and payable immediately upon notice.[59] Defendant has not made a rental payment since April 2024.[60] Plaintiff anticipates that unpaid rent and late fees will continue to accrue up until the time the Court rules on Plaintiff's motion for summary judgment.[61] On January 23, 2025, Plaintiff put Defendant on notice of its past due rent.[62] More than ten days have passed since the Plaintiff's transmission of the notice of past due rent and Defendant has not tendered payment of past due rent.[63]

## DISPUTED FACTS

Plaintiff states it is an undisputed fact that Defendant continues to use the Property to operate its business.[64] Defendant "admits that it is currently using some portion of the [Property], but denies that it is able to use all portions of the [Property] because the air conditioning systems do not function properly preventing [Defendant] from using all of the space."[65]

Plaintiff states it is an undisputed fact that Defendant owes past due rent for May through December of 2024 and January and February of 2025.[66] Defendant "admits that

---

[57] R. Doc. 14-4 at ¶ c.; R. Doc. 19 at ¶ c.
[58] R. Doc. 14-4 at ¶ d.; R. Doc. 19 at ¶ d.
[59] R. Doc. 14-4 at ¶ e.; R. Doc. 19 at ¶ e.
[60] R. Doc. 14-4 at ¶ f.; R. Doc. 19 at ¶ f; R. Doc. 27-1 at ¶ k.; R. Doc. 29-4 at ¶ k.
[61] R. Doc. 14-4 at ¶ g.; R. Doc. 19 at ¶ g.
[62] R. Doc. 27-1 at ¶ m. (citing R. Doc. 25-3); R. Doc. 29-4 at ¶ m.
[63] R. Doc. 27-1 at ¶ n. (citing R. Doc. 27-2); R. Doc. 29-4 at ¶ n.
[64] R. Doc. 27-1 at ¶ j. (citing R. Doc. 27-2).
[65] R. Doc. 29-4 at ¶ j. (citing R. Doc. 29-1 at ¶ 10).
[66] R. Doc. 27-1 at ¶ l. (citing R. Doc. 27-2).

it owes Plaintiff some portion of the rent for the months" Plaintiff listed, "but denies that it owes all of the rent for these months because [Defendant] is entitled to a reduction from the rent for the costs of repairs to the air conditioning systems in the leased premises."[67]

## LAW AND ANALYSIS

In this case, Plaintiff moves for summary judgment on its Louisiana state law breach of contract claim.[68] "Under Louisiana law, '[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking of an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'"[69] It is undisputed that: (1) Plaintiff is currently leasing the Property to Defendant through June 30, 2026;[70] (2) under the Lease, Defendant is obligated to pay $33,500 per month in rent on or before the 10th day of each month;[71] (3) under the Lease, if rent is not paid on or before the 10th day of each month, a late charge of 5% of the rent amount is assessed and is due immediately upon notice;[72] (4) Defendant has not made a rental payment since April 2024;[73] (6) on January 23, 2025, Plaintiff put Defendant on notice of its past due rent;[74] and (7) More than ten days have passed since the Plaintiff's transmission of the notice of past due rent and Defendant has not tendered payment of past due rent.[75]

Defendant argues there is a disputed issue of material fact with respect to what

---

[67] R. Doc. 29-4 at ¶ l. (citing R. Doc. 29-1 at ¶¶ 8-10).
[68] R. Doc. 14; R. Doc. 14-1.
[69] *Giles v. Bayview Loan Servicing*, No. 20-1128, 2020 WL 3545384, at *2 (E.D. La. June 30, 2020) (quoting *Favrot v. Favrot*, No. 2010-0986, at pp. 14-15 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108-09).
[70] R. Doc. 14-4 at ¶ b.-c.; R. Doc. 19 at ¶ b.-c.
[71] R. Doc. 14-4 at ¶ d.; R. Doc. 19 at ¶ d.
[72] R. Doc. 14-4 at ¶ e.; R. Doc. 19 at ¶ e.
[73] R. Doc. 14-4 at ¶ f.; R. Doc. 19 at ¶ f; R. Doc. 27-1 at ¶ k.; R. Doc. 29-4 at ¶ k.
[74] R. Doc. 27-1 at ¶ m. (citing R. Doc. 25-3); R. Doc. 29-4 at ¶ m.
[75] R. Doc. 27-1 at ¶ n. (citing R. Doc. 27-2); R. Doc. 29-4 at ¶ n.

portion of the rent is owed because, although it continues to use the Property to operate its business, it does not use *all* portions of the leased Property at this time.[76] Defendant argues the air conditioning systems do not function properly thereby preventing it from using all of the space. Although there may be a dispute as to what portions of the Property the Defendant is using, this factual dispute is immaterial. Defendant is leasing the entire Property and is obligated to pay rent for the entire Property pursuant to the Lease, and whether Plaintiff is actually using the entire leased premises is immaterial.[77] Even if this factual dispute were determined in Defendant's favor, this fact would not provide Defendant a valid defense entitling it to a reduction in rent.

Defendant also argues the Court must deny Plaintiff's motion for summary judgment because there is a genuine dispute of material fact as to whether Defendant is entitled to a reduction in rent for the money it spent in an attempt to repair the Property's air conditioning systems.[78] Moreover, Defendant argues there are genuine disputes of material fact over whether Defendant is obliged to make further repairs to the air conditioning systems, whether the air conditioning systems must be replaced rather than repaired, and whether the Property is suitable for its intended use.[79]

Defendant cites Section 15 of the Lease and Louisiana Civil Code article 2694 to support its argument that, because it has a right to a reduction in rental payments under these circumstances, the factual disputes are material.[80] Under Section 15 of the Lease,

> Lessee will at Lessee's sole expense keep and maintain in good repair the entire Leased Premises including without limitation interior walls, floors,

---

[76] R. Doc. 27-1 at ¶ j. (citing R. Doc. 27-2).
[77] *Id.*; R. Doc. 1-1.
[78] R. Doc. 29 at pp. 3-5.
[79] *Id.* at pp. 5-8.
[80] *Id.* at pp. 3-5.

10

> ceilings, ducts, utilities, air conditioning, heating and lighting and plumbing and any parking area exclusively used by Lessee. Lessor shall be responsible to maintain the roof, foundations, outside walls and all structural components (not including doors) throughout the Term. Lessor shall not be obliged to make any repair with the exception of items on Exhibit B,[81] unless it shall be notified in writing by Lessee of the need of such repair and shall have had a reasonable period of time to make such repair, and shall not be liable to make any repair occasioned by Lessee's acts within the Leased Premises. Lessor shall not be liable for any damage or loss in consequence of defects in the Leased Premises causing leaks, stoppage of water, sewer or drains or any other defects about the Leased premises.[82]

Article 2694 provides that

> If the lessor fails to perform his obligation to make necessary repairs within a reasonable time after demand by the lessee, the lessee may cause them to be made. The lessee may demand immediate reimbursement of the amount expended for the repair or apply that amount to the payment of rent, but only to the extent that the repair was necessary and the expended amount was reasonable.[83]

Both Section 15 of the Lease and Article 2694 require Defendant to give notice to Plaintiff of the need for any repair and to provide Plaintiff a reasonable opportunity to make the requested repair before doing the repair itself.[84] Although Defendant, through Mills, attests that it "has notified the Lessor on multiple occasions" of its issues with the Property's air conditioning, Defendant has not provided any evidence that it provided notice to Plaintiff of the air conditioning system's need for repair or replacement and gave Plaintiff a reasonable period of time to make the repair. Absent such evidence, Mills's unsupported affidavit "setting forth ultimate or conclusory facts and conclusions of law

---

[81] The items listed in Exhibit B include the elevator, flooring, "Add Offices In fish bowl area," interior painting, electrical upgrades, outdoor parking lot pole lights, plumbing upgrades, and "External Improvements." R. Doc. 1-1 at pp. 12-13. Exhibit B does not list air conditioning. *Id.*
[82] R. Doc. 1-1 at p. 6.
[83] LA. CIV. CODE art. 2694.
[84] *Id.*; R. Doc. 1-1 at p. 6.

[is] insufficient to defeat" Plaintiff's motion for summary judgment.[85] Thus, Defendant has not established that there is a material factual dispute defeating the Plaintiff's motion for summary judgment.

Even if Article 2694, standing alone, imputed an obligation on Plaintiff to repair and/or replace the Property's air conditioning, the parties contractually removed Plaintiff's obligation in Section 15 of the Lease. "The Civil Code . . . leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Code which govern their lease relationship."[86] Section 15 of the Lease expressly places the responsibility to "keep and maintain" the Property's "air conditioning" on Defendant, not Plaintiff.[87] Pursuant to Section 15 the Lease, Defendant must, at its "sole expense" and "without limitation" maintain the Property's air conditioning in "good repair."[88] Section 15 of the Lease unequivocally holds Defendant liable for repair and/or replacement of the air conditioning system.[89] Plaintiff is responsible only for maintaining "the roof, foundations, outside walls and all structural components (not including doors)."[90] These items clearly do not encompass the Property's air conditioning.[91]

Even if Plaintiff were liable for repair and/or replacement of the Property's air conditioning under the Lease and Louisiana law, Defendant has not properly asserted its claim for reduction in rent. Under Louisiana law, "[i]f the lessor fails to fulfill" its

---

[85] *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citing *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).
[86] *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96), 702 So. 2d 648, 666.
[87] R. Doc. 1-1 at p. 6.
[88] *Id.*
[89] *Id.*; *see also Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 794 (5th Cir. 2010).
[90] R. Doc. 1-1 at p. 6.
[91] *Id.*; *see also Adam, Inc. v. Dividend, Inc.*, 447 So. 2d 80, 83 (La. Ct. App. 1984) ("[W]e find that an air conditioning system is not an element of a building's structure.").

obligation to maintain the leased premises in a condition fit for its intended use and to make necessary repairs, "the law provides the lessee with two options. He can sue for dissolution of the lease agreement and resulting damages, or he can make indispensable repairs himself and deduct a reasonable cost thereof from the rent due."[92] "A lessee is not justified in retaining possession of the leased premises rent-free without pursuing either of these codal remedies."[93] Article 2694 "gives the lessee the right to withhold rent only to apply it to the cost of the repairs; it does not sanction the application of economic pressure on a lessor by such action."[94] Rather than pursuing the remedies provided in Louisiana's Civil Code, the undisputed facts show that Defendant unilaterally decided to withhold the entirety of the rental payments but continue its use of the Property. Defendant's actions are authorized by the law. Defendant cannot now make a post-hoc claim for reduction in rent.[95]

The undisputed facts of this case entitle Plaintiff to summary judgment on its claim that Defendant is in breach of the Lease and is liable for past-due rent, late fees, attorneys' fees, and costs. Because Defendant (1) agreed to the Lease, (2) breached its obligation to pay rent under the Lease, and (3) caused damages to Plaintiff in the form of unpaid rent, late fees, and attorneys' fees, Plaintiff is entitled to summary judgment in its favor on its breach of contract claim.[96]

---

[92] *McMillian v. Anderson*, 45,929, pp. 9-10 (La. App. 2 Cir. 1/26/11), 57 So. 3d 422, 426-27 (first citing LA. CIV. CODE arts. 2693 & 2694; then *New Hope Gardens, Ltd. v. Lattin*, 530 So. 2d 1207 (La. App. 2d Cir. 1988)).
[93] *New Hope Gardens*, 530 So. 2d at 1210.
[94] *Id.*
[95] *Id.*; *McMillian*, 57 So. 3d at 426-27; *727 Toulouse, L.L.C. v. Bistro at the Maison De Ville, L.L.C.*, 2012-1014, pp. 16-17 (La. App. 4 Cir. 8/21/13), 122 So. 3d 1152, 1162-1163; *Keever v. Knighten*, 532 So. 2d 826, 827-28 (La. Ct. App. 4 Cir. 1988).
[96] *Giles*, 2020 WL 3545384, at *2 (quoting *Favrot*, 68 So. 3d at 1108-09).

## CONCLUSION

**IT IS ORDERED** that summary judgment is **GRANTED** in Plaintiff's favor against Defendant for:

1. Past-due rent for the months of May 2024, June 2024, July 2024, August 2024, September 2024, October 2024, November 2024, December 2024, January 2025, and February 2025 in the amount of $33,500 per month for a total of $335,000;

2. Under Section 3 of the Lease,[97] a late charge of 5% of the $33,500 rental payment for each month Defendant did not make a rental payment, including May 2024, June 2024, July 2024, August 2024, September 2024, October 2024, November 2024, December 2024, and January 2025 for a total of $15,075;

3. Under Section 19 of the Lease,[98] attorneys' fees and costs; and

4. Post-judgment interest.[99]

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a motion for attorneys' fees and costs with supporting documentation within **15 days** of the date of this order.

**IT IS FURTHER ORDERED** that Plaintiff's motion for disbursement of registry funds is **GRANTED**.[100] The Clerk of Court is authorized and directed to draw a check on the funds on deposit in the registry of this court in the principal amount of $267,576.07, plus all interest earned less the assessment fee for the administration of funds, payable to High Performance Properties No. 3, LLC at 3131 N. I-10 Service Rd. E., Suite # 400, Metairie, LA 70002, and mail the check to George Nalley, Nalley & Drew, APLC, 2450

---

[97] R. Doc. 1-1 at p. 1.
[98] *Id.* at p. 8.
[99] "The post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594 (5th Cir. 2006).
[100] R. Doc. 41.

Severn Ave., Suite 100, Metairie, LA 70001 , in partial satisfaction of the above judgment. This amount will be subtracted from the amount awarded above.

**New Orleans, Louisiana, this 15th day of April, 2025.**

*[Signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**